| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Larnita Pette<br>2588 El Camino Real Ste F-195<br>Carlsbad, CA 92008<br><br>707-853-2049<br><br><br><br>*Plaintiff or Attorney for Plaintiff* | FILED<br>OCT 0 4 2017<br>CLERK U.S. BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br>BY:_____ Deputy Clerk |

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES

| In re:<br><br>Beverly Monique Murray-Calcote<br><br><br>Debtor(s). | CASE NO.: 2:17-bk-11972-RK<br><br>CHAPTER: 7<br><br>ADVERSARY NUMBER: 2:17-ap-01488-RK |
|---|---|
| Larnita Pette<br><br>Plaintiff(s)<br><br>Versus<br><br>Beverly Monique Murray-Calcote<br><br>Defendant(s) | **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004-1]** |

TO THE DEFENDANT(S): A Complaint has been filed by the Plaintiff against you. If you wish to defend against the Complaint, you must file with the court a written pleading in response to the Complaint. You must also serve a copy of your written response on the party shown in the upper left-hand corner of this page. The deadline to file and serve a written response is <u>11/01/2017.</u> If you do not timely file and serve the response, the court may enter a judgment by default against you for the relief demanded in the Complaint.

A status conference in the adversary proceeding commenced by the Complaint has been set for:

| | |
|---|---|
| **Date:** | **December 5, 2017** |
| **Time:** | **01:30 PM** |
| **Hearing Judge:** | **Robert N. Kwan** |
| **Location:** | **255 E Temple St., Crtrm 1675, Los Angeles, CA 90012** |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**You must comply with LBR 7016–1, which requires you to file a joint status report and to appear at a status conference.** All parties must read and comply with the rule, even if you are representing yourself. You must cooperate with the other parties in the case and file a joint status report with the court and serve it on the appropriate parties at least 14 days before a status conference. A court–approved joint status report form is available on the court's website (LBR form F 7016–1.STATUS.REPORT) with an attachment for additional parties if necessary (LBR form F 7016–1.STATUS.REPORT.ATTACH). If the other parties do not cooperate in filing a joint status report, you still must file with the court a unilateral status report and the accompanying required declaration instead of a joint status report 7 days before the status conference. **The court may fine you or impose other sanctions if you do not file a status report. The court may also fine you or impose other sanctions if you fail to appear at a status conference.**

KATHLEEN J. CAMPBELL
CLERK OF COURT

Date of Issuance of Summons and Notice of Status Conference in Adversary Proceeding: October 2, 2017

By: ____ "s/" Shafari Tatum ____

Deputy Clerk



This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2016                    Page 2            **F 7004–1.SUMMONS.ADV.PROC**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

A true and correct copy of the foregoing document entitled: **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004–1]** and (2) the accompanying pleading(s) entitled:

_____

_____

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005–2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| Date | Printed Name | Signature |
|------|--------------|-----------|
|      |              |           |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2016*                                                **F 7004–1.SUMMONS.ADV.PROC**

# FREE LEGAL HELP

A creditor has sued you in bankruptcy court. You were served with a Summons and Complaint, and you must now file an Answer. If you do not file an Answer on time, the court may enter a default judgment against you. This means that your debt may not be discharged and you will be responsible for paying it back.

## IF YOU CAN NOT AFFORD AN ATTORNEY, FREE LEGAL HELP MAY BE AVAILABLE.

For more information, call:

## Public Counsel's

## Debtor Assistance Project Hotline

## (213) 385-2977, ext. 704



35TH ANNIVERSARY

THE PUBLIC INTEREST LAW OFFICE OF THE LOS ANGELES COUNTY AND BEVERLY HILLS BAR ASSOCIATIONS

# AYUDA LEGAL GRATUITA

Su acreedor le ha demandado en la corte de bancarrota. Usted recibió la demanda, llamada "Summons" y "Complaint." Usted debe archivar una respuesta a la demanda en la corte. Si no archiva la respuesta a tiempo, la corte puede decidir en su contra. Si eso sucede, la deuda no se descargará en su caso de bancarrota y Usted será responsable por pagar al acreedor.

## SI LE FALTAN RECURSOS PARA CONTRATAR A UN ABOGADO, LLAME A LA LINEA DE AYUDA LEGAL GRATUITA.

Para mas información, llame al:

### Proyecto de Ayuda al Deudor
### de
### Public Counsel

### (213) 385-2977, ext. 704



**35TH ANNIVERSARY**
THE PUBLIC INTEREST LAW OFFICE OF THE LOS ANGELES COUNTY AND BEVERLY HILLS BAR ASSOCIATIONS

**FILED**

OCT 0 2 2017

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                    Deputy Clerk

**ENTERED**

OCT 0 2 2017

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                    Deputy Clerk

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:17-bk-11972-RK |
| BEVERLY MONIQUE MURRAY-CALCOTE | Chapter 7 |
| Debtor. | Adv. No. 2:17-ap-01488-RK |
| LARNITA PETTE | **ORDER SETTING INITIAL STATUS CONFERENCE IN ADVERSARY PROCEEDING** |
| Plaintiff(s), | |
| vs. | |
| BEVERLY MONIQUE MURRAY-CALCOTE | |
| Defendant(s). | |

**TO THE PARTIES TO THE ABOVE-ENTITLED ADVERSARY PROCEEDING,**

**WHETHER REPRESENTED BY COUNSEL OR SELF-REPRESENTED:**

This adversary proceeding is assigned to Judge Robert Kwan, United States

Bankruptcy Judge.  This matter having been assigned to Judge Kwan,

IT IS HEREBY ORDERED as follows:

1. A status conference in the adversary proceeding is hereby scheduled before

   Judge Kwan for Tuesday December 5, 2017 at 1:30 p.m., in Courtroom 1675,

   Roybal Federal Building, 255 East Temple Street, Los Angeles, California.   All

1  parties to the adversary proceeding are ordered to appear at the status conference
2  either by counsel, or for themselves if they are self-represented.  This order to
3  appear applies to all plaintiffs, all parties who have filed counterclaims and cross-
4  claims, all defendants served with a complaint, counterclaim or cross-claim, and all
5  parties to a removed action (the "Parties").[1]

6  2. **As a party to this adversary proceeding, your appearance at the status**
7  **conference is required by this order and Local Bankruptcy Rule 7016-1.  The**
8  **failure of a Party to appear at a status conference or a pre-trial conference**
9  **without excuse may be considered an abandonment or failure to prosecute**
10  **or defend diligently, and the court may impose sanctions against the**
11  **culpable Party, including monetary sanctions or terminating sanctions, such**
12  **as dismissal of the adversary proceeding or entry of default judgment may**
13  **be entered against the defaulting Party.  Rules 7016-1 and 9011-3 of the**
14  **Local Bankruptcy Rules.**

15  3. The court expects that all parties have read and are familiar with the applicable
16  court rules, including the Local Bankruptcy Rules of this court, which may be
17  viewed online on the court's website at http://www.cacb.uscourts.gov/local-rules.

18  4. As required by the applicable rules of court, including Rule 7004 of the Federal
19  Rules of Bankruptcy Procedure, Plaintiff, or Counterclaimant, or Cross-Claimant,
20  or Removing Party must promptly serve copies of the following documents on all
21  other parties:

22  a. This order;

23  b. Summons and complaint, or counterclaim, or cross-claim, or notice of
24  removal of action, as applicable;

25  ---
[1] All parties are required to be in the courtroom promptly at the time of hearing. This means parties should
26  set aside at least 15 minutes to account for possible problems with traffic, parking, getting through the
courthouse security checkpoint and taking the building elevator, etc. The address and parking information
27  for the court can be found on the court's website at http://www.cacb.uscourts.gov/court-locations/los-
angeles

28

1          c.  Notice of required compliance with Local Bankruptcy Rule 7026-1.

2    Summonses to be served with pleadings must be served within 7 days of issuance

3    by the Clerk of Court as required by Rule 7004(e) of the Federal Rules of

4    Bankruptcy Procedure.

5  5.  Plaintiff, or Counterclaimant, or Cross-Claimant, or Removing Party must promptly

6    file a proof of service indicating that all documents in paragraph 4 of this order

7    were served on all other Parties.  Failure to serve copies of these documents in a

8    timely manner and/or failure to file a proof of service of these documents in a

9    timely manner may result in the court imposing sanctions against the culpable

10    Party for failure to prosecute.

11  6.  Pursuant to Local Bankruptcy Rule 7016-1(a)(2), all Parties must file and serve a

12    Joint Status Report at least fourteen days before the status conference  (see

13    paragraph 1 of this order).  For the Joint Status Report, the Parties must use the

14    Local Form 7016-1.STATUS.REPORT, which can be found on the court's website

15    at http://www.cacb.uscourts.gov/forms/local_bankruptcy_rules_forms or at the

16    court's intake office on the 9th Floor of the Roybal Federal Building, 255 East

17    Temple Street, Los Angeles, California.

18  7.  If any Party fails to cooperate in the preparation of a Joint Status Report, the other

19    Party or Parties must file and serve a Unilateral Status Report at least ten days

20    before the date scheduled for the status conference hearing.  Any Unilateral

21    Status Report must include a declaration under penalty of perjury made by the

22    Party filing the Unilateral Status Report, or the Party's attorney, explaining the

23    attempts made to obtain the cooperation of the Party that failed to cooperate in

24    preparing a Joint Status Report.

25  8.  **As a party to this adversary proceeding, you are required to prepare and file**

26    **a Joint Status Report or a Unilateral Status Report by this order and Local**

27    **Bankruptcy Rule 7016-1.  The failure of a Party to cooperate in the**

28    **preparation and filing of a Joint Status Report or a Unilateral Status Report**

1    **without excuse may also be considered an abandonment or failure to**

2    **prosecute or defend diligently, and the court may impose sanctions against**

3    **the culpable Party, including monetary sanctions or terminating sanctions,**

4    **such as dismissal of the adversary proceeding or entry of default judgment**

5    **may be entered against the defaulting Party.  Rules 7016-1 and 9011-3 of the**

6    **Local Bankruptcy Rules.**

7    9.  At the status conference, the court expects that the parties will be prepared to

8    discuss the status of service of the pleadings (including the complaint,

9    counterclaims and cross-claims and pleadings in removed actions), the status of

10    responsive pleadings  (including answers and motions to attack the pleadings,

11    such as motions to dismiss, to strike or for more definite statement, to remand or

12    transfer venue), the status of served but non-appearing parties (including whether

13    requests for entry of default or motions for default judgment are pending), and the

14    matters set forth in Local Bankruptcy Rule 7016-1 (including proposed schedules

15    for discovery completion, law and motion matters, pretrial conference and trial,

16    whether the parties have conducted an early meeting under Local Bankruptcy

17    Rule 7026-1, whether the parties are interested in and have discussed settlement,

18    and mediation or alternative dispute resolution), and any other issues affecting the

19    status or management of the adversary proceeding.

20    IT IS SO ORDERED.

21                                      ###

22

23

24

25

26

27    OCT 0 2 2017.

28                                  **U.S. Bankruptcy Judge**

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only)<br>*17-Ap- 01488 RK* |
|---|---|

| PLAINTIFFS<br>Larnita A. Pette | DEFENDANTS<br>Beverly Monique Murray-Calcote |
|---|---|

**RECEIVED**
**SEP 2 9 2017**
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                        Deputy Clerk

| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Larnita A. Pette (Pro Se)<br>2588 El Camino Real, Suite F-195, Carlsbad, CA 92008<br>(707) 853-2049 | ATTORNEYS (If Known)<br>Julie J Villalobos, Oaktree Law<br>10900 183rd Street, Suite 270<br>Cerritos, CA 90703 |
|---|---|

| PARTY (Check One Box Only)<br>☐ Debtor      ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor    ☐ Other<br>☐ Trustee | PARTY (Check One Box Only)<br>☒ Debtor      ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☐ Other<br>☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Complaint for nondischargeability of two pending lawsuits pursuant to 11 U.S.C. section 523(a)(6)
and/or section 727(a)(4)(A)(B)

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property – §542 turnover of property
☐ 12-Recovery of money/property – §547 preference
☐ 13-Recovery of money/property – §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner – §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☑ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability – §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability – §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability – §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability – §523(a)(5), domestic support
☑ 68-Dischargeability – §523(a)(6), willful and malicious injury
☐ 63-Dischargeability – §523(a)(8), student loan
☐ 64-Dischargeability – §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief -- other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |

Other Relief Sought

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Beverly Monique Murray-Calcote | BANKRUPTCY CASE NO.<br>2:17-bk-11972-RK | |
| DISTRICT IN WHICH CASE IS PENDING<br>Central District of California | DIVISION OFFICE<br>Los Angeles | NAME OF JUDGE<br>Robert Kwan |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF<br>United States Trustee (LA) | DEFENDANT<br>Beverly Monique Murray-Calcote | ADVERSARY<br>PROCEEDING NO.<br>2:17-ap-01487 |
| DISTRICT IN WHICH ADVERSARY IS PENDING<br>Central District of California | DIVISION OFFICE<br>Los Angeles | NAME OF JUDGE<br>Robert Kwan |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>*Larnita A. Pette (Pro Se)* | | |
| DATE<br>*September 29, 2017* | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Larnita A. Pette (Pro Se) | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

1  Larnita A. Pette
2  2588 El Camino Real, Suite F-195
   Carlsbad, CA 92008
3  Mobile: (707) 853-2049
   E-Mail: larnita.pette@gmail.com
4
5  Plaintiff: PRO SE

```
┌─────────────────────────────┐
│          FILED              │
│      SEP 29 2017            │
│  CLERK U.S. BANKRUPTCY COURT │
│ CENTRAL DISTRICT OF CALIFORNIA│
│ BY:              Deputy Clerk │
└─────────────────────────────┘
```

6
7              UNITED STATES BANKRUPTCY COURT

8               CENTRAL DISTRICT OF CALIFORNIA

9                  LOS ANGELES DIVISION

10
11  In re:                              ) Case No.: 2:17-bk-11972-RK
                                        )
12  **BEVERLY MONIQUE MURRAY-**         )
                                        ) Chapter: 7
13  **CALCOTE**                         )
                                        ) Adv. No.: 17-AP- 01488 RK
14          Debtor,                     )
                                        )
15  ─────────────────────────────      ) **COMPLAINT FOR**
                                        ) **NONDISCHARGEABILITY OF PENDING**
16                                      ) **LAWSUITS PURSUANT TO 11 U.S.C**
                                        ) **§523(a)(6) AND/OR 11 U.S.C.**
17  Larnita Pette,                      ) **§727(a)(4)(A)(B)**
                                        )
18          Plaintiff,                  )
        vs.                             )
19                                      )
20  Beverly Monique Murray-Calcote,     )
                                        )
21          Defendant                   )
                                        )
22

23  Under the provisions of Federal Rules of Bankruptcy Procedure Rule), Larnita Pette (the

24  "Plaintiff") complains of Debtor Beverly Monique Murray-Calcote (the "Defendant") that, in an

25  attempt to defeat two pending civil lawsuits filed in the California Superior Courts, Defendant

26  filed for Chapter 7 bankruptcy protection. The Defendant's willful and malicious conduct

27  damaged Plaintiff and resulted in the pending lawsuits. Additionally, Plaintiff objects to a Chapter

28
                                        1

1  7 discharge of the two lawsuits based on the false oath and claims made by Defendant in her

2  Chapter 7 schedules.

3  **JURISDICTION AND VENUE**

4      1.      This Court has jurisdiction over the subject matter of this adversary proceeding

5  pursuant to the provisions of 28 U.S.C. §1334. This adversary proceeding relates to the Chapter 7

6  Bankruptcy case of Beverly Monique Murray-Calcote, Case No. 2:17-bk-11972-RK, now

7  pending in the United States Bankruptcy Court for the Central District of California, Los Angeles

8  Division.

9      2.      Venue herein is proper pursuant to the provisions of 28 U.S.C. §1409.

10  **STATEMENTS OF FACT**

11      3.      On May 8, 2015, Plaintiff filed a lawsuit in the San Diego County Superior Court

12  ("SDCSC") case 37-2015-000-15654-CU-PO-CTL.

13      4.      In SDCSC case, Plaintiff filed a lawsuit as an individual and as an interested party

14  on behalf of Plaintiff's mother, Bobbye J. Rives deceased against the Defendant and Ralph

15  Sanders. (California Code of Civil Procedure §§ 337.60 and 377.60). SDCSC Causes of Action:

16  Elder Abuse; Neglect; Wrongful Death; Intentional Infliction of Emotional Distress; Defamation-

17  Count 1; Defamation-Count 2; Negligence Count 1; Negligence Count 2; Trespass to Personal

18  Property; Conversion, include claims that seek relief under the enhanced provisions of

19  California's Elder Abuse and Dependent Adult Civil Protection Act. (Welfare and Institution

20  Code § 15600 et seq.) including California Probate Code § 259.

21      5.      Defendant was aware of that Decedent suffered from diabetes for over 20 years,

22  was extremely hard of hearing, and had knowledge of the type of caregiver services Decedent

23  required. (Exhibit 1)

24      5.      Defendant and Plaintiff routinely talked at 2-3 times a week discussing the health

25  and requirements of the Decedent and the Defendant's mother, Beverly J. Madison, the

26  Decedent's half-sister.

27      6.      Both were suffering from the complications of Diabetes, including cognitive

28  impairment. Defendant hired a caregiver to provide assistance for her mother.

2

AMENDED COMPLAINT FOR NONDISCHARGEABILITY OF PENDING LAWSUITS

7.      Defendant agreed with Plaintiff that the Decedent could not live by herself based on bi-monthly visits Defendant and her family made to Decedent's home while Plaintiff lived with Decedent to provide the caregiver services Decedent required.

8.      SDCSC trial date was set for April 21, 2017.

9.      On July 13, 2016, Plaintiff filed a lawsuit (Probate Petition to Remove) in the Orange County Superior Court ("OCSC") case 30-2016-00863391-PR-TR-CJC

10.     The OCSC lawsuit was filed to preserve the assets of the Trust due to the fact that Defendant and co-trustee were making representations through their attorneys that they were insolvent and on the verge of filing for bankruptcy.

11.     OCSC is a Petition for Order: Removing Ralph Sanders & Beverly Murray-Calcote as Trustees; Surcharge Ralph Sanders and Beverly Murray-Calcote; Denying Trustee Compensation to Ralph Sanders and Beverly Murray-Calcote; Instructing Co-Trustees to Produce Further Information and Accountings; instructing Co-Trustees to Distribute Assets of the Trust; Enjoining Ralph sanders and Beverly Murray-Calcote from Further Acts as Trustees; Prohibiting Use of Trustee Assets to Pay Legal Expenses to Oppose Petition; Appointing Interim Trustee; Appointing Successor Trustee.

12.     On November 17, 2016, the OCSC issued an order freezing the assets of the Bobbye J. Rives Trust ("Trust") and preventing the Defendant and Ralph Sanders from administering any assets of the Trust. The court order remains in effect pending the outcome of the Chapter 7 Bankruptcies filed by the Defendant and Ralph Sanders.

13.     On January 25, 2017, Ralph Sanders filed a voluntary petition for Chapter 7 Bankruptcy protection.

14.     On February 17, 2017, Defendant filed a voluntary petition for of Chapter 7 Bankruptcy protection.

15.     Defendant failed to disclose in the Chapter 7 bankruptcy petition that she was and is a beneficiary and Co-Trustee of the Trust.

3

16.     Defendant failed to notify Plaintiff, or file a "Notice of Stay" with Dan Abbott, Plaintiff's attorney, the SDCSC and the OCSC before her initial 341(a) hearing on March 24, 2017.

a.      Plaintiff's attorney, Dan Abbott, received the "Notice of Stay" on April 6, 2017 via SDCSC Register of Actions and scheduled ex parte hearing.

b.      SDCSC received the "Notice of Stay" on April 6, 2017

c.      OCSC received the "Notice of Stay" on April 12, 2017

17.     Defendant failed to disclose in the Chapter 7 bankruptcy schedules that she and her husband, Joseph T. Calcote, received in excess of $100,000 in inheritance and compensation from the Trust as a beneficiary and Co-Trustee.

18.     Defendant deliberately concealed all income and assets, which included all personal and real property belonging to Decedent that she received from the Trust

19.     The SDCSC allegations state that Defendant was negligent, willful and malicious:

(A)     As an agent for Mrs. Bobbye J. Rives ("Decedent") with a Durable Power of Attorney and Health Care Directive that allowed Defendant to make medical decisions over objections by Decedent, Defendant failed to provide the minimal caregiver services the Decedent required to maintain her health and safety. (Exhibit 2).

(B)     As an Interested Person on behalf of the Decedent, Plaintiff alleges, "DEFENDENTS tortious conduct was the actual and proximate cause of DECEDENT'S…rapid health deterioration, the need for emergency medical intervention, and eventual death".

(C)     Furthermore, Defendant published or caused to be published two defamatory letters, (1) dated November [21]12, 2012 accusing Plaintiff of the crime of Elder Abuse by stating that "Plaintiff physically assaulted the DECEDENT, her own mother, and had her forcibly removed from her home and admitted against her will for a psychological evaluation". The statement is false. And (2) September 16, 2014 states "Plaintiff had no rights under DECEDENT'S

4

1    will and trust and was further not permitted to enter DECEDENT'S house in

2    connection with any funeral services". The statement is false.

3    (D)    The Defendant willfully and maliciously disseminated the two letters to

4    relatives, neighbors, and friends at a reception following the Decedent's memorial

5    services, to staff at Scripps Memorial Hospital, to staff at Las Villas de Carlsbad

6    nursing facility and to staff at Eternal Hills Mortuary.

7    (E)    The letters are libelous and expose Plaintiff to hatred, contempt and

8    ridicule due to the false statements made about the Plaintiff.

9    10.    On or about January 20, 2016, Defendant made representations through her

10   attorney, Christopher Albence that she was on the verge of bankruptcy and would be seriously

11   considering filing for Bankruptcy within 60 days.

12   21.    On February 23, 2016, the Defendant and Co-Trustee, Ralph Sanders hired and

13   paid for the service of additional counsel, Louis Ventura, who prepared and filed an Anti-SLAPP

14   motion against Plaintiff which sought to remove Defamation and Negligence Causes of Action

15   from the First Amended Complaint of the SDCSC lawsuit. The motion was denied.

16   22.    On May 23, 2016 a Mandatory Settlement Conference (MSC) was held for the

17   SDCSC case. The Defendant and Co-Trustee, Ralph Sanders represented to the Court that both

18   were insolvent and were considering filing for bankruptcy.

19   23.    On July 13, 2016, Plaintiff filed a Petition for Removal in OCSC (case 30-2016-

20   00863391-PR-TR-CJC) to preserve the remaining assets of the Trust and asked that the remaining

21   Trust assets be frozen. The assets of the Trust were ordered frozen by the Court.

22   24.    On May 5, 2017 at a scheduled OCSC hearing, the Court emphasized to the

23   Defendant and co-trustee Ralph Sanders that the court order remains in effect pending the next the

24   outcome of both Chapter 7 bankruptcy cases.

25   25.    The OCSC allegations state that the Defendant and her Co-Trustee, Ralph E.

26   Sanders, acting as Trustees of the Trust willfully and maliciously breached the fiduciary duty

27   owed to the beneficiaries of the Trust.

28

5

1     (A) The Co-Trustees made haphazard distributions to themselves at their

2     discretion, while the other beneficiaries had to wait until the Co-Trustees decided

3     to provide distributions to the other beneficiaries. The Co-Trustees also made

4     improper distributions to themselves.

5     (B) The Co-Trustees double-charged costs of the selling Decedent's residence

6     to the Trust.

7     (C) The Co-Trustees sold the residence for significantly below fair market

8    value.

9     Beverly Murray-Calcote, as the listing agent to sell the residence, which enriched the Co-

10    Trustee Beverly Murray-Calcote to the detriment of the other beneficiaries.

11    26. On August 26, 2016, SDCSC denied the Defendant's Anti-SLAPP motion.

12    27. On April 21, 2017, the civil trial was scheduled to begin in the SDCSC case. The

13   Defendant filed for bankruptcy on January 25, 2017, 3 months before the civil trial was scheduled

14   to start and within weeks of all mandatory trial cutoff dates.

15    28. The Plaintiff is informed and believes that the Defendant and her Co-Trustee,

16   Ralph Sanders, the Co-Defendant in the civil lawsuits, filed for a Chapter 7 bankruptcy

17   specifically to defeat the pending lawsuits.

18    (A) On, January 25, 2017, Ralph Sanders filed for Chapter 7 bankruptcy

19   protection in the Orange County Division of the Central California Bankruptcy Court. (Case 8:17-

20   bk-10265-MW).

21    (B) On February 17, 2017, Defendant filed for Chapter 7 bankruptcy

22    protection.

23    (C) Both the Defendant and her co-defendant (Ralph Sanders) in the civil

24    lawsuits, failed to disclose the fact that they were Co-Trustees of the Trust who

25    had beneficial interests in and received distributions and compensation from the

26    Trust in their initial Chapter 7 schedules.

27

28

6

(D)    Both Trustees filed for Chapter 7 bankruptcy within weeks of each other and weeks before the scheduled SDCSC trial date mandatory cutoff dates. The trial was scheduled to start on April 21, 2017.

(E)    Defendant and Ralph Sanders were required to provide additional records and documentation by the US Trustees and Chapter 7 trustees regarding inaccuracies in their Chapter 7 schedules and failure to disclose their interests in the Trust.

29.    Defendant concealed income and assets that she received from the Trust. Defendant stated under oath and signed under penalty of perjury at her 341(a) hearing on March 24, 2017 that she read the petition and schedules and that the information contained therein was accurate and correct.

30.    As a beneficiary and Co-Trustee of the Trust, the Defendant and her husband, Joseph T. Calcote received enough money (in excess of $100,000) in inheritance and compensation to pay down, most, if not all, of her listed debt.

**FIRST CLAIM FOR RELIEF**

**Nondischargeability against the Defendant – Pursuant to 11 U.S.C. §523(a)(6)**

31.    The Plaintiff adopts, incorporate by reference, and alleges herein all of the allegations set forth in paragraph 1 through 31 inclusive, as if set forth individually in this Second Claim for Relief.

32.    Pursuant to §523(a)(6) of the United States Bankruptcy Code, a debt incurred by a Defendant who engages in willful and malicious conduct that results in damages shall be nondischargeable.

33.    Defendant acted willfully, maliciously and with deliberate intent to damage and to defame Plaintiff by falsely accusing Plaintiff of the crime of Elder Abuse.

34.    Defendant was appointed by Decedent a Durable Power of Attorney for Health Care (DPAHC) with broad powers to override Decedent's wishes for medical intervention. (Exhibit 1).

7

35.    Defendant's willful disregard for the needs of the Decedent, Plaintiff's mother Bobbye J. Rives, when she was alive and dependent on Decedent to provide caregiver services for her were the proximate causes of the Decedent's death.

36.    Defendant willfully disregarded her duties as health care proxy for the Decedent.

37.    Defendant failed to provide the caregiver services that she knew Decedent needed which were the same caregiver services that Defendant provided for her mother, Beverly J. Madison.

38.    Defendant failed "to follow the express terms of the Trust, has charged the Trust for improper costs and fees and failed to observe proper trust procedures and formalities and demonstrated a lack of intent to treat all beneficiaries equally".

39.    Defendant's willful disregard of her duties as Co-Trustee of the Bobbye J. Rives Trust to the beneficiaries and to administer the Trust according to the law damaged Plaintiff.

40.    In committing the acts hereinabove described, the Defendant's willful and malicious conduct resulted in Plaintiff filing the two civil lawsuits that Defendant is now seeking to defeat with a Chapter 7 bankruptcy discharge.

41.    Because thereof, Plaintiff is entitled to damages in an amount to be determined at the time of trial.

**SECOND CLAIM FOR RELIEF**

**Nondischargeability of Defendant – Pursuant to 11 U.S.C. §727(a)(4)(A)(B)**

42.    The Plaintiff adopts, incorporates by reference, and alleges herein all of the allegations set forth in paragraph 1 through 42 inclusive, as if set forth individually in this Second Claim for Relief.

43.    Pursuant to § 727(a)(4)(A)(B) of the United States Bankruptcy Code, "(a) the court shall grant the debtor a discharge, unless (4) the debtor knowingly and fraudulently, in or in connection with the case (A) made a false oath or account; (B) presented or used a false claim;

///

///

///

8

44.     On February 17, 2017, within 2 months of the commencement of the civil trial and within weeks of the mandatory discovery cutoff dates for the SDCSC case, the Defendant filed fraudulent financial figures on her Chapter 7 Bankruptcy schedules and concealed the fact that she was a Co-Trustee and beneficiary of the Trust.

45.     During the 341(a) hearing held March 24, 2017, the Defendant verbally affirmed, under oath, that she read her petition and that financial figures she provided on her Chapter 7 Bankruptcy petition were true and accurate.

46.     The Defendant knowingly and fraudulently, in or in connection with her Chapter 7 Bankruptcy case made a false oath or account and presented or used a false claim regarding the Defendant's status as a beneficiary and Co-Trustee of the Trust.

47.     As a direct and proximate result of the foregoing, Plaintiff has suffered damages.

48.     In committing the acts hereinabove described, the Defendant acted fraudulently, willfully and with deliberate intent to deceive Plaintiff and the Court, and because thereof, Plaintiff is entitled to damages in an amount to be determined at the time of trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment against Defendant follows:

1.     On the First Claim for Relief, for judgment against the Defendant determining that the Defendant's willful and malicious conduct towards the Plaintiff resulted in the two pending lawsuits. Therefore, the two pending lawsuits are not dischargeable in her bankruptcy case and for judgment according to proof.

2.     On the Second Claim for Relief, for judgment against Defendant determining that the Defendant knowingly and fraudulently, in or in connection with his Chapter 7 Bankruptcy case made a false oath and used a false claim regarding the Defendant's status as a beneficiary and Co-Trustee of the Trust and her liability for the pending lawsuits, is not dischargeable in her bankruptcy case and for judgment according to proof.

///

///

///

9

AMENDED COMPLAINT FOR NONDISCHARGEABILITY OF PENDING LAWSUITS

1         3.     The Plaintiff is awarded its costs of suit incurred herein and for such other and

2  further relief, as this Court deems proper.

3

4

5

6

7                             Dated this 29th of September, 2017

8

9                             Larnita A. Pette, Pro Se

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

 Gmail

**Larnita Pette <larnita.pette@gmail.com>**

## See Attachment

**Larnita Pette <larnita.pette@gmail.com>**                                    Mon, Mar 3, 2014 at 10:44 AM
To: bevcalcote@yahoo.com

I'm sending you this attachment which outlines my outreach to my mother's PCP and cardiologist over 4 years ago. I'd been working with Dr. Cava since 2006 when I first noticed my mother's irrational rages to refer her to an endocrinologist to get her diabetes under better control.

My mother's mental and emotional state has deteriorated considerably since then. My mother is my only close relative and I am doing what I think is best for her. Whether or not you agree with what I do, I'm living with the situation 24/7, you're not. I know you're doing what you feel is best for your mother. That's all I need to know. I don't need to agree with everything you're doing to help you mother and you don't have to agree with everything I'm doing to help my mother. I know you're doing your best and so am I. Believe me, I've looked at all options and talked to many professionals. My goal is to see my mother and me live the rest of our lives in peace and harmony.

Right now, I feel that by listening to her rants about me, you are enabling her delusions and distortions. I'm asking you again to cut her off when she starts down that path with you by just saying **"I know Nita is doing what she thinks is best for you"** and then change the subject. If she continues to rant, then leave or hang up the phone. Letting her rant only validates, in her mind, her delusions and paranoia. She will get the message that you don't want to talk about or listen to any issues she may have with me. My mother needs professional help. **If she has issues with me, then tell her to talk to a professional about it, not you.** You have enough on your plate with your mother, your kids and your job. All you need to know is that whatever I do to help my mother, I will always have my mother's best interests in my heart.

You and no one else (including me) can help my mother right now. My mother needs professional help. All you're doing, by letting her ramble on, is making it harder for me to get my mother the professional help she needs. My mother is miserable, afraid and is losing control of her cognitive skills. Please, let me help my mother by doing what I've asked of you. Don't be her enabler.

Nita

 **Subj.doc**
40K

Subj:    **Bobbye Rives referral to Dr. Legner**
Date:    10/9/2009 2:12:43 PM Pacific Daylight Time
From:    Monte7340
To:    sdcvamd@gmail.com

Dr. Du and Dr. Cava,

Dr. Du based on our conversation this morning, I am including the experiences of Jacqueline Marcell, "Elder Rage", with the rage she experienced with her elderly father and the difficulty she had getting him diagnosed. I can relate to her experiences. I know that my mother is very stubborn, ornery, belligerent, easily agitated, and thinks that I am her worst enemy. I also know that she is miserable, socially more withdrawn than she has ever been, and is deathly afraid of being diagnosed with dementia or Alzheimer's. I also know that she is not getting any better. In the past year, after the death of my father, I became acutely aware of how her cognitive skills were deteriorating (after I learned how to deal with her aggression).

I searched and found that I was not the only child experiencing these issues with elderly an elderly parent. I also found that there are treatment options that include a comprehensive diagnosis by a team of specialists trained in geriatric assessment and treatment. I read "Elder Rage" and could relate to the experiences that the author, Jacqueline Marcell faced with her father.

I searched and found that the UCSD Medical Center has very active programs for Seniors, Seniors Only CARE, http://health.ucsd.edu/specialties/socare/ , (performing psychometric assessments on an outpatient basis) and the Senior Behavioral Health Program, http://health.ucsd.edu/specialties/psych/senior/, (providing inpatient and outpatient services). I contacted coordinators for both programs who recommended Dr. Victor Legner, http://ucsd.photobooks.com/directory/profile.asp?setsize=10&dbase=main&pict_id=0676843, who might have the temperament, sensitivity, beside manor, and experience to gain my mother's trust and as a result effectively use the resources and team approach of UCSD's Medical Center to effectively diagnose and treat my mother.

I am asking that, as physicians, you use your ability to access the UCSD Medical Center referral service, http://medinfo.ucsd.edu/contact, to contact the Physician Liaison Service, 888-539-8741, specifically, Dr. Legner to see if he can provide some insights or techniques on how to get my mother to accept a referral to the medical center's geriatric program. Dr. Legner is a board certified Internist and Geriatician. I'm sure that he has faced patients who are in denial.

I have been told that I may have to let my mother fail before she will accept treatment. I really don't want to do that because I know if I let her fail, her options for treatment will be more limited. I believe that if she can be diagnosed early enough the quality of her life will be much better, right now she is afraid because she is losing control and she is miserable and making everyone else around her miserable. If she is diagnosed with dementia, I am hopeful that the progression of the dementia can be slowed by some of the new treatments, medications, and behavioral therapies that are being used.

I will also contact Dr. Legner's office for advice on getting my mother to agree to an appointment. I know that she feels that she is taking too much medication and I have talked to her about seeing a geriatric specialist who deals only with elderly patients, just like pediatricians deals only with babies. She accepts the idea of seeing a geriatric specialist, as long as you don't mention dementia or Alzheimers and don't associate those words with the geriatric specialist. This is what makes me think that she will accept a referral to Dr. Legner, if the referral is presented in a way

that does not give rise to her fears of losing control, being institutionalized, or being seen as crazy.

I am closing with a summary of Jacqueline Marcell's experiences with her father and the medical system she dealt with to get her parents diagnosed and treated. Her experiences have given me hope and made me more determined to get my mother diagnosed sooner rather than wait until her cognitive skills have deteriorated so much that her options for treatment are very limited.

Sincerely,

Larnita Pette
(707) 853-2049


Elder Care & Elder Rage: If I Only Knew Then What I Know Now!
by Jacqueline Marcell
Posted July 19, 2005 10:00 AM
Posted in Caregiving
Author Elder Rage www.ElderRage.com

For eleven years I pleaded with my elderly father to allow a caregiver to help him with my ailing mother, but after 55 years of loving each other--he adamantly insisted on taking care of her himself. Every caregiver I hired to help him sighed in exasperation, "Jacqueline, I just can't work with your father--his temper is impossible to handle. I don't think you'll be able to get him to accept help until he's on his knees himself."

My father had always been 90% great, but boy-oh-boy that temper was a doozy. He'd never turned it on me before, but then again--I'd never gone against his wishes either. When my mother nearly died from an infection caused by his inability to continue to care for her, I immediately flew from Southern California to San Francisco to save her life--having no idea that in the process it would nearly cost me my own.

EARLY SIGNS OF DEMENTIA?
I spent three months nursing my 82-pound mother back to relative health, while my father said he loved me one minute but then get furious over some trivial little thing and call me horrible names and throw me out of the house the next. I was stunned to see him get so upset, even running the washing machine could cause a tizzy, and there was no way to reason with him. It was so heart wrenching to have my once-adoring father turn against me.

I immediately had the doctor evaluate my father, only to be flabbergasted that he could act completely normal when he needed to! I could not believe it when the doctor looked at me as if I was crazy. She didn't even take me seriously when I reported that my father had left the gas stove on without it lighting, or that he had nearly electrocuted my mother. Luckily, I walked into the bathroom just three seconds before he plugged in a huge power strip, which was in a tub of water--along with my mother's soaking feet!

Much later, I was furious to find out that my father had instructed his doctor (and everyone he came into contact with) not to listen to anything I said, because I was "just a (bleep bleep) liar"--and all I wanted was his money! (Boy, I wish he had some.) Then things got serious. My father had never laid a hand on me my whole life, but one day he nearly choked me to death for adding HBO to his television--even though he had eagerly consented to it just a few days before. Terrified and shaking, I dialed 911 for the first time in my life. The police came and took him to a psychiatric hospital for evaluation, but I just could not believe it when they released him saying they couldn't find anything wrong with him. What is even more astonishing is that similar horrifying incidents occurred three more times.

CAREGIVER CATCH 22

I was trapped. I couldn't fly home and leave my mother alone with my father--because she'd surely die from his inability to care for her. I couldn't get healthcare professionals to believe me--because my father was always so darling and sane in front of them. I couldn't get medication to calm him, and even when I finally did--he refused to take it, threw it in my face, or flushed it down the toilet. I couldn't get him to accept a caregiver in their home, and even when I did--no one would put up with him for very long. I couldn't place my mother in a nursing home--he'd just take her out. I couldn't put him in a home--he didn't qualify. They both refused any mention of Assisted Living--and legally I couldn't force them. I became a prisoner in my parents' home for nearly a year trying to solve every crisis after crisis, crying rivers daily, and infuriated with an unsympathetic medical system that wasn't helping me appropriately.

GERIATRIC DEMENTIA SPECIALIST MAKES RIGHT DIAGNOSIS

You don't need a doctorate degree to know something is wrong, but you do need the right doctor who can diagnose and treat properly. Finally, I stumbled upon a compassionate neurologist specialized in dementia, who performed a battery of blood, neurological and memory tests, along with CT and P.E.T. scans. He reviewed all of my parents' many medications and also ruled out all the many reversible dementias. And then, you should have seen my face drop when he diagnosed Stage One Alzheimer's in both of my parents--something that all of their other doctors had missed entirely.

TRAPPED IN OLD HABITS

What I'd been coping with was the beginning of Alzheimer's, which starts very intermittently and appears to come and go. I didn't understand that my father was addicted and trapped in his own bad behavior of a lifetime and that his old habit of yelling and pounding the table to get his way was now coming out over things that were somewhat illogical and irrational... at times. I also didn't understand that demented does not mean dumb at all (a concept that is not widely appreciated) and that he was still socially adjusted never to show his "Hyde" side to anyone outside the family. Even with the onset of dementia, it was amazing that he could still be so manipulative and crafty. On the other hand, my mother was as sweet and lovely as she'd always been.

BALANCING BRAIN CHEMISTRY

I learned that Alzheimer's is just one type of dementia (making up 65% of all dementias) and there's no stopping the progression nor is there yet a cure. However, if identified early there are medications that in most people can mask/slow the progression of the disease, keeping a person in the early independent stage longer--delaying full-time supervision and nursing home care. (Ask a Dementia Specialist about the FDA approved medications: Aricept, Exelon, Razadyne and Namenda.)

After the neurologist treated the dementia and then the depression (often-present in dementia patients) in both of my parents, he prescribed a small dose of anti-aggression medication for my father, which helped smooth out his volatile temper without making him sleep all day. (Boy I wish we'd had that fifty years ago!) It wasn't easy to get the dosages right and not perfect, but at least we didn't have to have police intervention anymore! And once my parents' brain chemistries were better balanced, I was able to optimize nutrition, fluid intake, and all their medications with much less resistance.

CREATIVE BEHAVIORAL TECHNIQUES

As soon as the medications started working, I was finally able to implement some creative behavioral techniques to cope with all the bizarre behaviors. Instead of logic and reason--I learned to use distraction, redirection and reminiscence. Instead of arguing the facts--I simply agreed, validated their frustrated feelings, and lived in their reality of the moment. I finally learned to just "go with the flow". And, if none of that worked, a bribe of vanilla ice cream worked the best to get my obstinate father into the shower, even as he swore a blue streak at me that he'd just taken one yesterday (over a week ago)!

Then finally, I was able to get my father to accept a caregiver in their home (he'd only alienated 40 that year-most only there for about ten minutes), and with the tremendous help of Adult Day Health Care five days a week for them, and a weekly support group for me, everything started to fall into place. It was so wonderful to hear my father say once again, "We love you so much, sweetheart."

ALZHEIMER'S / DEMENTIA OFTEN OVERLOOKED
What is so shocking is that no one ever discussed the possibility of Alzheimer's with me that first year. I was told their "senior moments" and intermittently odd behaviors were just old age, senility, stress, and a "normal part of aging". Since one out of every eight persons by the age of 65, and nearly half by the age of 85, get Alzheimer's Disease--I should have been alerted to the possibility. Had I simply been shown the "Ten Warning Signs of Alzheimer's", I would have realized a year sooner what was happening and known how to get my parents the help they so desperately needed.

If any of this rings true for you or someone you love, I urge you to seek early evaluation from a Dementia Specialist-immediately!

TEN WARNING SIGNS OF ALZHEIMER'S
(Reprinted with permission of the Alzheimer's Association)

1. Memory loss
2. Difficulty performing familiar tasks
3. Problems with language
4. Disorientation of time and place
5. Poor or decreased judgment
6. Problems with abstract thinking
7. Misplacing things
8. Changes in mood or behavior
9. Changes in personality
10. Loss of initiative

Expanded Descriptions: http://www.elderrage.com/alzheimers.asp
###
The Addendum by renowned neurologist/dementia specialist, Rodman Shankle, MS MD (former Medical Director UCI Alzheimer's Center), makes it also valuable for healthcare professionals (including doctors), and required text at numerous universities for courses in geriatric assessment and management.

Jacqueline is also a recent breast cancer survivor who advocates that everyone, especially caregivers, closely monitor their own health.

 Gmail

Larnita Pette <larnita.pette@gmail.com>

## See Attachment

**Larnita Pette** <larnita.pette@gmail.com>                                                    Mon, Mar 3, 2014 at 2:25 PM
To: tybudd33@yahoo.com, bevcalcote@yahoo.com

I forgot to copy Tyrone on this email. I know that my mother will be trying to talk to both of you.

Nita

---------- Forwarded message ----------
**From: Larnita Pette** <larnita.pette@gmail.com>
Date: Mon, Mar 3, 2014 at 10:44 AM
Subject: See Attachment
To: bevcalcote@yahoo.com

[Quoted text hidden]

📎 **Subj.doc**
40K

 Gmail

**Larnita Pette <larnita.pette@gmail.com>**

## UCI Senior Heath Doctors
2 messages

**Larnita Pette** <larnita.pette@gmail.com>                          Fri, Mar 14, 2014 at 9:46 AM
To: bevcalcote@yahoo.com

Hi Bev,

Here's a link to the Find a Doctor page in the UCI Senior Health Program. There are 4 pages with Geriatric Doctors,
Neurologists and memory specialists.

http://www.ucirvinehealth.org/find-a-doctor/search-results/?page=3&services=senior+health+services

Nita

**Larnita Pette** <larnita.pette@gmail.com>                          Fri, Mar 14, 2014 at 9:48 AM
To: bevcalcote@yahoo.com

Here's the link to the first page.

http://www.ucirvinehealth.org/find-a-doctor/search-results/?services=senior+health+services

Nita
[Quoted text hidden]

# EXHIBIT 2

RUSSELL E. GRIFFITH, ESQ.                    )
ROCHELLE & GRIFFITH, LLP                      )
1991 VILLAGE PARK WAY, SUITE 105             )
ENCINITAS, CA 92024                          )
                                             )
                                             )

---

## AFFIDAVIT - RE: SCRIBNER'S ERROR
## ON ADVANCE HEALTH CARE DIRECTIVE

STATE OF CALIFORNIA          )
                             )      SS.
COUNTY OF SAN DIEGO          )

RUSSELL E. GRIFFITH, of legal age, being first duly sworn, deposes, declares and says:

      1.     I was the attorney for Bobbye J. Rives and I assisted Ms. Rives with her estate planning documents. Included in these services was the drafting of an Advance Health Care Directive (the "Directive") which was signed by Bobbye J. Rives on November 30, 2011, a copy of which is attached hereto.

      2.     On page 3 of the Directive, there exists a scribner's error wherein our offices misspelled the name of the Designated Agent appointed by Ms. Rives under the Directive.  The Directive identifies BEVERLY MURAY-CALCOTE (with one "R" in the name "MURAY") as the agent with a misspelled name when the correct name is BEVERLY MURRAY-CALCOTE (which has two "R's" in "MURRAY").

      3.     Bobbye J. Rives intended that BEVERLY MURRAY-CALCOTE serve as her Agent under the Directive and all references in the Directive to BEVERLY MURAY-CALCOTE mean and refer to BEVERLY MURRAY-CALCOTE.

      I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: September 24, 2014

                                        RUSSELL E. GRIFFITH

State of California
County of San Diego

Subscribed and sworn to (or affirmed) before me on this 24th day of September, 2014, by Russell E. Griffith, personally known to me or proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

_____
Signature                    Seal:

DIANA L. INMAN
COMM. #2004473
Notary Public - California
San Diego County
My Comm. Expires Jan. 16, 2017

1

## ADVANCE HEALTH CARE DIRECTIVE
(California Probate Code Section 4701)

## EXPLANATION

You have the right to give instructions about your own health care. You also have the right to name someone else to make health care decisions for you. This form lets you do either or both of these things. It also lets you express your wishes regarding donation of organs and the designation of your primary physician. If you use this form, you may complete or modify all or any part of it. You are free to use a different form.

Part 1 of this form is a power of attorney for health care. Part 1 lets you name another individual as agent to make health care decisions for you if you become incapable of making your own decisions or if you want someone else to make those decisions for you now even though you are still capable. You may also name an alternate agent to act for you if your first choice is not willing, able, or reasonably available to make decisions for you. (Your agent may not be an operator or employee of a community care facility or a residential care facility where you are receiving care, or your supervising health care provider or employee of the health care institution where you are receiving care, unless your agent is related to you or is a coworker.)

Unless the form you sign limits the authority of your agent, your agent may make all health care decisions for you. This form has a place for you to limit the authority of your agent. You need not limit the authority of your agent if you wish to rely on your agent for all health care decisions that may have to be made. If you choose not to limit the authority of your agent, your agent will have the right to:

(A)   Consent or refuse consent to any care, treatment, service, or procedure to maintain, diagnose, or otherwise affect a physical or mental condition.
(B)   Select or discharge health care providers and institutions.

(C) Approve or disapprove diagnostic tests, surgical procedures, and programs of medication.

(D) Direct the provision, withholding, or withdrawal of artificial nutrition and hydration and all other forms of health care, including cardiopulmonary resuscitation.

(E) Make anatomical gifts, authorize an autopsy, and direct disposition of remains.

Part 2 of this form lets you give specific instructions about any aspect of your health care, whether or not you appoint an agent. Choices are provided for you to express your wishes regarding the provision, withholding, or withdrawal of treatment to keep you alive, as well as the provision of pain relief. Space is also provided for you to add to the choices you have made or for you to write out any additional wishes. If you are satisfied to allow your agent to determine what is best for you in making end-of-life decisions, you need not fill out Part 2 of this form.

Part 3 of this form lets you express an intention to donate your bodily organs and tissues following your death.

Part 4 of this form lets you designate a physician to have primary responsibility for your health care.

After completing this form, sign and date the form at the end. The form must be signed by two qualified witnesses or acknowledged before a notary public. Give a copy of the signed and completed form to your physician, to any other health care providers you may have, to any health care institution at which you are receiving care, and to any health care agents you have named. You should talk to the person you have named as agent to make sure that he or she understands your wishes and is willing to take the responsibility.

You have the right to revoke this advance health care directive or replace this form at any time.

2

## PART 1
## POWER OF ATTORNEY FOR HEALTH CARE

**1.1 DESIGNATION OF AGENT:** I designate the following individual as
my agent to make health care decisions for me:

BEVERLY MURAY-CALCOTE
(name)

| | | | |
|---|---|---|---|
| (address) | (city) | (state) | (ZIP Code) |

(home phone)                    (cell phone).

**OPTIONAL:** If I revoke my agent's authority or if my agent is not willing,
able, or reasonably available to make a health care decision for me, I
designate as my first alternate agent:

SHELLY SHARP JONES
(name)

| | | | |
|---|---|---|---|
| (address) | (city) | (state) | (ZIP Code) |

(home phone)                    (cell phone)

3

2963

**OPTIONAL:** If I revoke my agent's authority or if my agent is not willing, able, or reasonably available to make a health care decision for me, I designate as my second alternate agent:

_____

(name)

_____

(address)          (city)      (state)    (ZIP Code)

_____        _____

(home phone)              (cell phone)

**1.2 AGENT'S AUTHORITY:**  My agent is authorized to make all health care decisions for me, including decisions to provide, withhold, or withdraw artificial nutrition and hydration and all other forms of health care to keep me alive, except as I state here:

_____

_____

_____

_____

(Add additional sheets if needed.)

4

**1.3 WHEN AGENT'S AUTHORITY BECOMES EFFECTIVE:** My agent's authority becomes effective when my primary physician determines that I am unable to make my own health care decisions unless I mark the following box.

If I mark this box ☐, my agent's authority to make health care decisions for me takes effect immediately.

**1.4 AGENT'S OBLIGATION:** My agent shall make health care decisions for me in accordance with this power of attorney for health care, any instructions I give in Part 2 of this form, and my other wishes to the extent known to my agent. To the extent my wishes are unknown, my agent shall make health care decisions for me in accordance with what my agent determines to be in my best interest. In determining my best interest, my agent shall consider my personal values to the extent known to my agent.

**1.5 AGENT'S POSTDEATH AUTHORITY:** My agent is authorized to make anatomical gifts, authorize an autopsy, and direct disposition of my remains, except as I state here or in Part 3 of this form:

_____

_____

_____

_____

(Add additional sheets if needed.)

**1.6 NOMINATION OF CONSERVATOR:** If a conservator of my person needs to be appointed for me by a court, I nominate the agent designated in this form. If that agent is not willing, able, or reasonably available to act as conservator, I nominate the alternate agents whom I have named, in the order designated.

5

## PART 2
## INSTRUCTIONS FOR HEALTH CARE

If you fill out this part of the form, you may strike any wording you do not want.

**2.1 END-OF-LIFE DECISIONS:** I direct that my health care providers and others involved in my care provide, withhold, or withdraw treatment in accordance with the choice I have marked below:

_____
Initial

(a) Choice Not To Prolong Life:
I do not want my life to be prolonged if (1) I have an incurable and irreversible condition that will result in my death within a relatively short time, (2) I become unconscious and, to a reasonable degree of medical certainty, I will not regain consciousness, or (3) the likely risks and burdens of treatment would outweigh the expected benefits, OR

_____
Initial

(b) Choice To Prolong Life:
I want my life to be prolonged as long as possible within the limits of generally accepted health care standards.

6

**2.2 RELIEF FROM PAIN:** Except as I state in the following space, direct that treatment for alleviation of pain or discomfort be provided at all times, even if it hastens my death:

_____

_____

_____

_____

(Add additional sheets if needed.)

**2.3 OTHER WISHES:** (If you do not agree with any of the optional choices above and wish to write your own, or if you wish to add to the instructions you have given above, you may do so here.) I direct that:

SEE EXHIBIT "A" ATTACHED HERETO AND INCORPORATED HEREIN BY THIS REFERENCE.

I further direct that:

_____

_____

_____

(Add additional sheets if needed.)

7

## PART 3
## DONATION OF ORGANS AT DEATH
## (OPTIONAL)

**3.1 Upon my death (mark applicable box):**

_____
Initial       (a) I do not desire to leave any anatomical gifts, OR

_____
Initial       (b) I give any needed organs, tissues, or parts, OR

_____
Initial       (c) I give the following organs, tissues, or parts only.

_____

_____

My gift is for the following purposes (strike any of the
following you do not want):
(1) Transplant
(2) Therapy
(3) Research
(4) Education

_____
Initial       (d) Other: _____

8

## PART 4
## PRIMARY PHYSICIAN
## (OPTIONAL)

**4.1** I designate the following physician as my primary physician:

NOLI CAVA, MD
(name of physician)

1933 CABLE STREET   SAN DIEGO      CA  92107
(address)             (city)        (state) (ZIP Code)

(619) 221-4490
(phone)

## PART 5

**5.1 EFFECT OF COPY:**  A copy of this form has the same effect as the original.

**5.2 DATE AND SIGNATURE OF PRINCIPAL:**   I sign my name to this Statutory Form Advanced Health Care Directive on November 30, 2011 at San Diego County, California.

BOBBYE J. RIVES
363 CERRO STREET
ENCINITAS, CA  92024

9

STATE OF CALIFORNIA   )
                             )   ss.
COUNTY OF SAN DIEGO  )

    On November 30, 2011 before me, Cynthia G. Griffith, a notary public, personally appeared BOBBYE J. RIVES who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or entity upon behalf of which the person acted, executed the instrument.

    I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

    WITNESS my hand and official seal.

_____
(Signature)

CYNTHIA G. GRIFFITH
Commission # 1948425
Notary Public - California
San Diego County
My Comm. Expires Aug 28, 2015

(Seal)

## EXHIBIT "A" TO ADVANCED HEALTH CARE DIRECTIVE

### GRANT OF AUTHORITY TO HEALTH CARE AGENT
### AND AUTHORIZATION UNDER HIPAA AND
### CALIFORNIA LAW FOR RELEASE OF HEALTH INFORMATION

I, BOBBYE J. RIVES, grant to my agent under my Advance Health Care Directive the authority to advocate for my health care needs even if I have not been determined to lack capacity.

This release shall apply to any of my information which is governed under the Health Insurance Portability and Accountability Act of 1996 (HIPAA), 42 USC §1320d and 45 CFR pts 160, 164, and California law. I intend my agent to be dealt with by all my health care providers, as required by HIPAA and California law, in the exact same way as I would be treated with respect to my rights regarding the use and disclosure of my identifiable protected health information or other medical records.

Pursuant to HIPAA and California law, I authorize any covered entity, including, but not limited to, any physician, health care professional, dentist, health plan, hospital, nursing home, clinic, laboratory, pharmacy, or any other covered health care provider, any insurance company, and the Medical Information Bureau, Inc., or other health care clearinghouse that has provided treatment or services to me or that has paid for or is seeking to be paid for services, to give, disclose, and release to my agent, without restriction and at my agent's request, all of my individually identifiable health information and medical records regarding any past, present, or future medical or mental health condition, including, but not limited to, any and all information relating to the diagnosis and treatment of sexually transmitted diseases, mental illness (including information contained in mental health records protected

11

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
220 Connecticut, Vista, CA 92084

A true and correct copy of the foregoing document entitled (*specify*): <u>Summons and Notice of Status Conference in</u>
<u>Adversary Proceeding [LBR7004-1]; Notice of Public Counsel's Debtor Assistance; Order Setting Initial Status</u>
<u>Conference in Adversary Proceeding; Adversary Proceeding Cover Sheet; Complaint for Nondischargeability of</u>
<u>Pending Lawsuits Pursuant to 11 U.S.C. § 523(a)(6) And/Or 11 U.S.C. § 727(a)(4)(A)(B)</u>
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in
the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that
the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated
below:

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL:**
On (*date*)  <u>10/03/2017</u>      , I served the following persons and/or entities at the last known addresses in this bankruptcy
case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail,
first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the
judge will be completed no later than 24 hours after the document is filed.
DEBTOR: Beverly Monique Murray-Calcote, 3166 West Avenue M-2, Lancaster, CA 93536

ATT. FOR DEBTOR: Julie Villalobos, Oaktree Law, 10900 183rd Street, Suite 270, Cerritos, CA 90703

☑ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)  <u>10/04/2017</u>      , I served
the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.

Judge's Copy: Robert Kwan, U.S. Bankruptcy Court, 255 E. Temple St, Rm 940, Los Angeles, CA 90017

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 10/03/2017 | Kimberly Richardson | _(signature)_ |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**Served By U. S. Mail (continued)**

ATTORNEY FOR CHAPTER 7 TRUSTEE
Noreen A. Madoyan
Jeremy W. Faith
Margulies Faith, LLP
16030 Ventura Blvd., Suite 470
Encino, CA 91436

CHAPTER 7 TRUSTEE
Rosendo Gonzales
Gonzales & Associates, PLC
530 South Hewitt Street, Suite 148
Los Angeles, CA 90013

UNITED STATES TRUSTEE
Kenneth G. Lau
Office of the United States Trustee
915 Wilshire Blvd., Suite 1850
Los Angeles, CA 90017